UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SAMI BAGHDADY

v.    CIV. NO. 05CV1494 (AHN)

GEORGE BAGHDADY, et al.

RULING ON DISCOVERY MOTIONS

Plaintiff's Motion to Preclude **[Doc. #124]**

On September 17, 2007, defendants disclosed a handwriting expert, John Paul Osborn, and provided an expert report offering an opinion on whether signatures on two documents were genuine signatures of plaintiff Sami J. Baghdady. If either of the questioned signatures were determined to be non-genuine, the expert was asked to determine, if possible, whether plaintiff's son, Sami S. Baghdady, signed either name.

Pending is plaintiff's Motion to Preclude **[Doc. #124]** defendants' expert John Paul Osborn on three grounds.[1]

1. Disqualification of Defendants' Expert

Plaintiff first argues that defendant's expert, John Paul Osborn, has a clear conflict in that he engaged in substantive conversations with plaintiff's counsel concerning this matter

---

[1] Oral argument was held on Tuesday, October 30, 2007.

1

prior to defendants' expert disclosure, dated September 17, 2007, and the issuance of Mr. Osborn's expert report.

The parties agree on the standard of law for disqualification of an expert witness. "Federal courts have inherent power to disqualify expert witnesses where or when it is necessary to protect the integrity of the adversary process, and/or to promote public confidence in the legal system." BP Amoco Chemical Company v. Flint Hills Resources, LLC, 500 F. Supp. 2d 957, 959 (N.D. Ill. 2007) (citation omitted).

> Courts apply a two-part test to determine whether an expert should be disqualified. The court first asks whether the party seeking disqualification acted reasonably in assuming that a confidential relationship existed and, second, whether confidential information was exchanged requiring disqualification of the expert. If both questions are answered in the affirmative, disqualification is warranted. However, if either inquiry is answered in the negative, disqualification is not appropriate. Disqualification of an expert is a drastic measure which courts should hesitate to impose except when absolutely necessary. Thus, the party seeking disqualification has the heavy burden of showing both the existence of a confidential relationship and the transmission of confidential information, and cannot satisfy this burden by relying on merely conclusory or ipse dixit assertions.

Id. at 960 (internal quotation marks and citations omitted); Hewlett-Packard Co. v. EMC Corp., 330 F. Supp 2d 1087, 1092 (N.D. Cal. 2004) ("disqualification is a drastic measure that courts should impose only hesitantly, reluctantly, and rarely."); Bristol-Myers Squibb Co., No. 95 CIV. 8833 (RPP), 2000 WL 42202, *4 (S.D.N.Y. Jan. 19, 2000) (applying two-prong test) (citing

cases); In re Ambassador Group, Inc. Litigation, 879 F. Supp 237, 242 (E.D.N.Y 1994) (applying two pronged test). "Unlike attorneys, expert witnesses serve generally as sources of information and not necessarily as recipients of confidences." Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 2000 WL 42202, *14 (internal quotation marks and citation omitted).

Existence of a Confidential Relationship

In support of his disqualification motion, plaintiff submitted the affidavit of his counsel, Michael Wrona, which states that, on July 2, 2007, Attorney Wrona

> spoke to Mr. Osborn about this matter. In our conversation, which I recall to have lasted at approximately 20 minutes, I revealed to Mr. Osborn, our client's name, the defendant's name, our client's claims and contentions, the Defendants' defenses and contentions, and the names of the Defendants' experts which had been set forth in the Defendants' Opposition to a Motion for Protective Order. During that discussion, Mr. Osborn provided me with his opinion that the documents in question should be examined by both parties' handwriting experts prior to any tests by a forensic expert, as the forensic expert would punch holes in the documents; thus, the handwriting experts should have an opportunity to review the unblemished documents prior to any destructive testing. Mr. Osborn even provided to me the name of a forensic expert should the need arise. Following that conversation, I sen[t] Mr. Osborn an e-mail regarding our conversation.

[Doc. 124, Wrona Aff. ¶7]. The e-mail from Attorney Wrona to Mr. Osborn is dated July 2, 2007, entitled "Possible New Matter," and states, "John-Thank you for taking the time to speak with me today. The title of the case in which we may require your

3

services is Sami Baghdady v. George Baghdady. I guess in the meantime we will wait to see what Dr. Tytell's report concludes." Id. Ex. D. Attorney Wrona further represents that, "[o]n August 23, 2007, I again spoke to Mr. Osborn to inquire as to the best method to preserve the documents that were to be sent to Defendants' forensic expert. Mr. Osborn and I spoke for at least 20 minutes, and during that discussion, he recommended that high resolution scans be made of the documents prior to their being sent to Defendants' forensic expert." Id. Wrona Aff. ¶11. "At no time did I tell Mr. Osborn that we would not be retaining him as an expert. At no time did Mr. Osborn contact me to advise me that representatives of the Defendants had contacted or retained him." Wrona Aff. ¶12.[2] Plaintiff admits that "no formal retainer occurred between Plaintiff and Osborn." [Doc. #124 at 4].

Defendants argue that "[n]o showing has been made that a confidential relationship was established and that prejudicial information was revealed to Mr. Osborn." [Doc. #126 at 7]. Osborn states he was first contacted in January 2007 by defendants' counsel and was formally retained by defendants to perform forensic document services in March 2007. [Doc. #126-4 Osborn Aff. ¶¶3, 4]. Osborn recalled speaking to Attorney Wrona in July

---

[2]Attorney Wrona also avers that, "[o]n August 14, 2007, Attorney Leydon e-mailed me to advise me, among other things, that the Defendants were no longer intending to use a hand-writing expert, but only a forensic expert." [Wrona Aff. ¶9]. However, Attorney Leydon's e-mail states "[w]e are only using Lyter - not Tytell." The e-mail does not state that defendants decided to forgo using any handwriting expert. Defendants agree, adding there is no legal obligation to disclose experts prior to the court ordered deadlines.

4

and August of 2007, but classified the calls as "general consultations" "during which he solicited from me my general opinions and advice regarding document examination methods." [Osborn Aff. ¶5]. Osborn denies that Attorney Wrona identified the parties or gave the name "Baghdady." [Osborn Aff. ¶6]. He states,

> At no time during any of my conversations with Atty. Wrona did he convey to me any information that he indicated to be "confidential" or which I consider "confidential." He only provided me with a very broad description of the claims involved in the case, the subject documents and the examinations that the Defendants were intending to perform. Again, at no point did he mention the names of any of the parties.

[Osborn Aff. ¶7]. Osborn states that he did not receive Attorney Wrona's July 2, 2007, e-mail at that time because he was in the "midst of switching e-mail programs and did not actually read the e-mail until I was contacted on or about September 26, 2007, by Atty. David Baghdady regarding the filing of Plaintiff's Motion to Preclude." [Osborn Aff. ¶10]. There is no dispute that plaintiff did not pay a retainer to Osborn for this case and no confidential agreement was entered into. See <u>Nikkal Indus., LTD v. Salton, Inc.</u>, 689 F. Supp. 187 (S.D.N.Y. 1988) ("since [plaintiff] had decided not to retain [the expert] it waived any right to claim privilege."). In short, plaintiff's counsel spoke to Osborn twice and sent one e-mail. Osborn was not retained as an expert, was not provided with any documents relevant to the case and was not requested to perform any services. On this

5

record, the Court cannot find that plaintiff developed a confidential relationship with Osborn or that confidential information was exchanged. There is no evidence that the communications were anything more than an informal consultation regarding technical questions about defendants' forensic expert and the preservation of documents prior to the forensic examination. Mayer v. Dell, 139 F.R.D. 1, 3 (D.D.C. 1991); Id. 689 F. Supp. at 191-92. ("[T]here is no evidence that the meeting constituted anything more than an employment style interview. There was a flow of information which was essentially technical.").

Disclosure of Confidential Information

Assuming, arguendo, that plaintiff could satisfy the first part of the test by establishing a confidential relationship, the Court finds that plaintiff has not sustained his burden of proving that confidential communications were disclosed. Osborn stated that his "communications were solely of technical, scientific nature regarding testing and analysis of documents. My business does not entail engaging in confidential litigation strategy planning as my testing, analysis and conclusions are scientific in nature and are not impacted by the desires or strategy of the persons who hire me." [Osborn Aff. ¶13]. "Communications based upon technical information as opposed to legal advice is not considered privileged." Nikkal Indus. Ltd. v. Salton, Inc., 680F. Supp. 187, 191-92 (S.D.N.Y. 1988); Popular, Inc. v. Popular Staffing Services, Corp. 239 F. Supp. 2d 150, 153

6

(D. Puerto Rico 2003) ("purely technical information is not confidential."); see Hewlett-Packard Co., 330 F. Supp. 2d at 1092 ("Experts are not advocates in the litigation but sources of information and opinions.").

Importantly, defendants point out that none of the communications between Attorney Wrona and Osborn related to the September 2005 mortgage, on which Osborn's examination and expert report focused, as "[d]efendants never communicated to the plaintiff that they intended to examine the September 6, 2005, mortgage nor did the plaintiff, presumably, know of such examination." [Doc. #126 at 10]. On this record, plaintiff cannot show that any confidential information regarding the 2005 mortgage was disclosed by plaintiff's counsel to Osborn. Wyatt By and Through Rawlins v. Hanan, 871 F. Supp. 415, 419 (M.D. Ala. 1994) ("Because the burden in on the party seeking to disqualify the expert, that party should point to specific and unambiguous disclosures that if revealed would prejudice the party.").

Accordingly, plaintiff's Motion to Preclude **[Doc. #124]** defendants' expert because of a conflict of interest is **DENIED** on this record.

2. <u>Irrelevant</u>

Plaintiff next argues that defendants' expert disclosure and expert report relate to matters which are wholly and completely irrelevant to any of the issues or parties in this case. Defendants disagree, contending that proof that plaintiff engaged in bank fraud and/or repeated falsehoods under oath is a proper

7

subject for cross examination. The Court declines to rule on the trial admissibility of Osborn's opinion at this time. It is the obligation of a party offering an expert opinion to lay a foundation for its admissibility. The trial judge will be in the best position to determine relevance after discovery and dispositive motions are concluded

Plaintiff's Motion to Preclude **[Doc. #124]** defendants' expert is **DENIED** on this ground.

3. Wrong on the Facts

Finally, plaintiff contends that defendants have "simply gotten the facts wrong about the supposed "forged document" and who signed it. [Doc. #124 at 2; Doc. #128 at 2]. Plaintiff maintains that, "Sami S. Baghdady did not sign the Mortgage at issue. That Mortgage was signed by Samir S. Baghdady, another of plaintiff's sons, pursuant to a power of attorney." [Doc. #128 at 2].[3] Accordingly, plaintiff argues that defendants' expert Osborn is clearly wrong in his conclusion that Sami S. Baghdady signed the documents. The Court declines to reach this question without further development of the record. Disagreement with the conclusion is not a basis for precluding an expert, while

---

[3] Sami S. Baghdady states in his affidavit that he "absolutely did not sign either the Mortgage or Family Rider attached to "Osborn's report" and "was not even in the country on September 6, 2005." [Doc. #124, Sami S. Baghdady Aff. ¶¶4, 5]. Plaintiff's reply brief contains the affidavit of Samir S. Baghdady, which states that the 92-94 Walnut Street mortgage, attached to Mr. Osborn's report as the "Questioned Document" was signed by Samir S. Baghdady pursuant to a Power of Attorney executed by his father, which specifically allowed him to sign the Mortgage on his father's behalf. [Doc. #128, Samir S. Baghdady Aff. ¶¶4-5].

8

questionable methodology may be a viable argument.

Plaintiff's Motion to Preclude **[Doc. #124]** defendants' expert is **DENIED** on this ground at this time.

Defendants' Motion to Compel [Doc. #129]

Defendants seek permission to conduct limited discovery, requesting leave to re-depose plaintiff Sami J. Baghdady; to depose his sons, Nadim Baghdady, Sami S. Baghdady and Samir S. Baghdady, and to subpoena the mortgage closing documents from Mortgage Master, Inc., the lender for the Mortgage on 92-94 Walnut Street, Belmont, Massachusetts. Defendants assert that all of the depositions will be short and can be concluded in one day if the witnesses are cooperative and answer the questions.[4]

Upon careful consideration, defendants' Motion to Compel **[Doc. #129]** is **GRANTED**. All of the depositions will be limited in subject matter, concluded in one day, and completed no later than **Friday, December 14, 2007.**

Defendants' Motion for Protective Order [Doc. #131]

A telephone conference was held on Tuesday, November 6, 2007, to address defendants' Motion for Protective Order dated November 5, 2007. As set forth below, defendants' Motion for Protective Order **[Doc. #131]** is **GRANTED** in part and **DENIED** in

---

[4]The 2005 documents that defendants contend were fraudulently executed and notarized and represented as genuine signature of the plaintiff include: a quitclaim deed dated August 5, 2005, from Nadia W. Baghdady to Sami J. Baghdady; a Power of Attorney dated July 29, 2005, from Sami J. Baghdady to Camille S. Baghdady; a Mortgage from Sami J. Baghdady to MERS dated August 5, 2005; a Mortgage from Sami J. Baghdady to Mortgage Master, Inc. dated September 6, 2005 (this latter mortgage is the subject of John Paul Osborn's expert report). [Doc. #126 at 4].

9

part.  At the conclusion of the conference, the Court ruled as follows.

The deposition of Sylvia Baghdady will go forward by agreement.  The deposition will be completed no later than **Friday, December 14, 2007.**

The deposition of George Baghdady will go forward by agreement on the following topics.  Plaintiff may ask questions about defendants' November 5, 2007, supplemental interrogatory responses, counterclaims, errata sheets, and other properties that plaintiff has learned about since the last deposition of George Baghdady.  Plaintiff's request for further documents is denied.  The Court further denies plaintiff's request to question George Baghdady regarding Adcom.  Finally, plaintiff is granted leave to ask non-duplicative questions regarding the Lebanon business and export/import business.  Duplicative questions will not be not permitted.

The parties agree that fact discovery is closed except for the depositions described above and two (2) preservation depositions that will be completed no later than **Friday, December 14, 2007.**

All fact discovery and depositions will be completed on or before **Friday, December 14, 2007.**


CONCLUSION

Plaintiff's Motion to Preclude defendants' Expert Witness John Paul Osborn **[Doc. #124]** is **DENIED** on the current record

without prejudice to renewal at the time of trial and after defendants have the opportunity to develop the record through limited discovery. Defendants will complete this limited discovery, as set forth above, by **Friday, December 14, 2007.**

Defendants' Motion to Compel plaintiff to answer deposition questions and to provide complete responses **[Doc. #129]** is **GRANTED** in accordance with this ruling.

Defendants' Motion for Protective Order **[Doc. #131] is GRANTED** in part and **DENIED** in part in accordance with this ruling.

All fact discovery and depositions will be completed by **Friday, December 14, 2007.** The parties may not extend this deadline by agreement. Any requests for an extension of time must be made <u>prior</u> to the close of discovery by motion and will only be granted upon a showing of good cause.

The parties are encouraged to contact the Court while scheduling the depositions to ascertain the availability of the Court to rule on any objections or issues that may arise during the deposition. Counsel are directed to contact the Court for a ruling if a witness refuses to answer a question.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the

district judge upon motion timely made.

SO ORDERED at Bridgeport this 15th day of November 2007.

```
       __/s/_____
       HOLLY B. FITZSIMMONS
       UNITED STATES MAGISTRATE JUDGE
```